CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

9/22/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| TYROSHELLE Y., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:24-cv-00030 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Tyroshelle Y. ("Tyroshelle") filed suit in this court seeking to overturn the Commissioner of Social Security's ("Commissioner's") final decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. Tyroshelle suffers primarily from fibromyalgia, right-side carpal tunnel syndrome, right-side tennis elbow, weakness and pain of the hips and lower extremities, obesity, anxiety, and depression. On review of her application for DIB, an administrative law judge ("ALJ") determined that, despite her physical and mental constraints, Tyroshelle could still perform a range of light work with additional limitations. Tyroshelle challenges that decision and seeks reversal and summary judgment in her favor. She argues that the ALJ's assessments of her physical impairments, along with her residual functional capacity ("RFC") findings, were not supported by substantial evidence. After a thorough review of the record, the court concludes that the ALJ's reasoning regarding the RFC findings was based on substantial evidence. Accordingly, the court will deny Tyroshelle's motion and grant summary judgment to the Commissioner.

## I.    STANDARD OF REVIEW

The Social Security Act (the "Act") authorizes this court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The court's role, however, is limited; it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted). Instead, the court, in reviewing the merits of the Commissioner's final decision, asks only whether the ALJ applied the correct legal standards and whether "substantial evidence" supports the ALJ's findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000).

In this context, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). It is "more than a mere scintilla" of evidence, *id.* (internal quotation omitted), but not "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation omitted). But "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) has been working, (2) has a severe impairment that satisfies the Act's duration requirement, (3) has an impairment that meets or equals an impairment listed in the Act's regulations, (4) can return to past relevant work (if any) based on her residual functional capacity ("RFC"), and, if not, (5) whether she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II.    RELEVANT PROCEDURAL HISTORY AND EVIDENCE

### A. Procedural History

On May 4, 2020, Tyroshelle filed an application for DIB, alleging disability beginning on May 20, 2019. (*See* R. 202–04.) Her date last insured ("DLI")—the date on which she last met the Act's insurance requirement, which is a prerequisite to receiving benefits—was December 31, 2024. (R. 901.) The DLI is the date by which she must establish disability to receive benefits.

Tyroshelle alleged disability due to myriad conditions, including fibromyalgia, right-leg weakness, "problems with balance with falls, trips," fatigue, arthritis, carpal tunnel syndrome,

right-sided tennis elbow, bilateral plantar fasciitis, mini-stroke, diabetes, hypertension, and anxiety. (R. 230.) Tyroshelle's claim was initially denied on October 20, 2020, and again upon reconsideration on March 10, 2021. (R. 126, 133–34.) Tyroshelle requested a hearing and, along with her counsel, appeared before ALJ Holly Munday on October 21, 2021. (R. 50–82.) ALJ Munday issued an unfavorable decision on Tyroshelle's claim on December 31, 2021. (R. 26–45.) On January 31, 2022, Tyroshelle requested that the Appeals Council review the unfavorable decision, but the Appeals Council denied the request for review on October 12, 2022. (R. at. 994–99.)

On December 12, 2022, Tyroshelle then filed for review in this court. (R. at 1000.) On July 5, 2023, the court granted the Commissioner's unopposed motion to remand this case for further proceedings, *see* 42 U.S.C. § 405(g) (sentence four). (R. at. 1006.) Subsequently, the Commissioner vacated the ALJ's unfavorable decision and remanded the case to an ALJ. (R. at. 1007–10.) Tyroshelle again appeared to testify, with counsel, before ALJ Munday on April 9, 2024. (R. at 928–66.) After considering the relevant evidence, Tyroshelle's medical records, her testimony, and the testimony of vocational expert Carmine Abraham, On July 12, 2024, ALJ Munday again issued an unfavorable decision. (R. 895.)

In summary, the ALJ concluded that Tyroshelle suffered from several severe medical impairments, but that she retained the RFC to perform light work with additional limitations. (R. 905–06.) Because a significant number of jobs exist in the national economy that an individual with Tyroshelle's limitations could perform, the ALJ determined that Tyroshelle was not disabled within the meaning of the Act on July 12, 2024. (R. 916.) The Appeals Council

denied Tyroshelle's request to review that decision (R. 927), and she filed suit in this court

seeking review for a second time. (Compl. [ECF No. 1]).

## B. Legal Framework

A claimant's RFC is her "maximum remaining ability to do sustained work activities in

an ordinary work setting" for eight hours a day, five days a week, despite her medical

impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)

(emphasis omitted). The ALJ makes the RFC finding between steps three and four of the five-

step disability determination. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th

Cir. 2017) (citing 20 C.F.R. § 404.1520(e)). "This RFC assessment is a holistic and fact-specific

evaluation; the ALJ cannot conduct it properly without reaching detailed conclusions at step

2 concerning the type and [functional] severity of the claimant's impairments." *Id.*

The Commissioner "has specified the manner in which an ALJ should assess a

claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is

by definition "a function-by-function assessment based upon all of the relevant evidence of

[the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the

ALJ must identify each impairment-related functional restriction that is supported by the

record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). The RFC should reflect credibly

established "restrictions caused by medical impairments and their related symptoms"—

including those that the ALJ found "non-severe"—that impact the claimant's "capacity to do

work-related physical and mental activities" on a regular and continuing basis. SSR 96-8p, 1996

WL 374184, at *1, *2.

Second, the ALJ's decision must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explain how he weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and the written decision built an "accurate and logical bridge from that evidence to his conclusion[s]," *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Shinaberry v. Saul*, 952 F.3d 113, 123–24 (4th Cir. 2020); *Thomas*, 916 F.3d at 311–12; *Patterson*, 846 F.3d at 662–63.

## C. Medical Evidence

Physical health

In September 2018, Tyroshelle saw Dr. Valencia Eggleston-Clark at the Carilion Clinic in Martinsville, VA. (R. 592.) She stated to Dr. Eggleston-Clark that "she was in pain all the time." (R. 592.) Dr. Eggleston-Clark diagnosed Tyroshelle with chronic low back pain, type-2 diabetes mellitus with hyperglycemia, right-arm numbness, chest discomfort, and hypertension. (R. 595.)[1] At that time, Tyroshelle was 5 feet 2.5 inches tall, weighed 271 pounds, and had a BMI of 48.78 kg/m2. (R. 594.) She was subsequently diagnosed with right-sided carpal tunnel syndrome and bilateral foot pain in October 2018, and Dr. Jonathan Krome administered right carpal tunnel and lidocaine injections in November 2018. (R. 326, 378.)

---

[1] Tyroshelle was also previously diagnosed with type-2 diabetes mellitus with neuropathy. (R. 605.)

Tyroshelle received injections again in March 2019, this time in her right lateral epicondyle and proximal forearm, following Dr. Krome's diagnosis of right elbow epicondylitis. (R. 376.) Tyroshelle continued to report right arm and hand pain through April 2019, so Dr. Krome referred Tyroshelle to an orthopedic hand surgeon, Dr. Horatiu Dancea. (R. 374, 576.) Dr. Dancea also diagnosed Tyroshelle with right carpal tunnel syndrome and right tennis elbow. (R. 578.)

Following these visits, Tyroshelle continued to report fatigue. (R. 560–66.) On September 30, 2019, she saw Dr. Sharukh Schroff, a rheumatologist, and complained of "severe right arm pain, bilateral shoulder pain, and right-hand [carpal tunnel syndrome]" and "right-sided sciatic pain radiating from her back down her right leg," and pain in her right shoulder, knees, and fingers. (R. 365; Pl.'s Br. at 5.) Following a musculoskeletal examination showing decreased range of motion in her shoulders and overall tenderness in her joints, Dr. Schroff diagnosed Tyroshelle with right-side sciatica and gave her a right wrist splint. (R. 368.) She also received injections in her lower back, but Tyroshelle later reported to Dr. Dancea that the injections did not provide relief. (R. 362, 545.) Tyroshelle continued to see Dr. Schroff through January 2020, reporting some improvement but that she still felt pain. (R. 356–58.) Dr. Schroff examined tender points, tenderness to the right clavicle and right elbow, swelling in the wrists and fingers, and decreased range of motion of the right and left shoulders. (*Id.*) Dr. Schroff advised that Tyroshelle continue taking Cymbalta to treat her fibromyalgia pain; treatment notes show that Tyroshelle was on active prescriptions for Voltaren, Cymbalta, Metformin, and hydrochlorothiade at the time of the appointment. (R. 350, 352.) Dr. Schroff's treatment notes from an appointment on April 15, 2020, show that Tyroshelle presented with

an elevated sedimentation rate, tenderness along the lumbar spine and right elbow, decreased range of motion in the shoulder, and mild swelling of the wrists, fingers, and hands. (R. 343–45.) Dr. Schroff diagnosed Tyroshelle with low back pain, bilateral knee pain, and a bilateral hip great trochanteric bursitis. (R. 346.) He administered injections into both hips and prescribed Gabapentin. (R. 345–46; 410.)

On April 19, 2020, Tyroshelle visited the Sovah Health-Martinsville Hospital, complaining of numbness and tingling in her lower extremities. (R. 462.) She was diagnosed with transient ischemic attack, anxiety, hypertensive urgency, diabetes mellitus, and hyperthyroidism. (R. 469.) The next day, her tests revealed an elevated erythrocyte sedimentation rate. (R. 384.) A few months after her hospital visit, she saw Dr. Schroff again for bilateral hip steroid injections.[2] (R. at 756–57.)

Starting January 11, 2021, Tyroshelle presented regularly to Dr. Schroff as well as Family Nurse Practitioner ("FNP") Susan Weeks.[3] (R. 781.) On January 11, 2021, Tyroshelle presented to FNP Weeks and reported difficulty exercising due to her fibromyalgia. (R. 783.) From March to September 2021, Dr. Schroff documented joint pain, swelling in the right arm, aching in the legs, diffuse muscle aches and weakness, decreased range of motion in the shoulders, and tingling in the right hand. (R. 852.) X-rays showed mild osteoarthritic changes. (R. 855.) Tyroshelle received regular bilateral hip steroid injections every three months for the rest of that year. (R. 862–63, 854, 850–51, 891–92.)

---

[2] Dr. Schroff administered steroid injections into both hips again on December 14, 2020. (R. 749.)

[3] Both Dr. Schroff and FNP Weeks deemed Tyroshelle "unable to work in any capacity," (R. 11, 12), but the ALJ deemed these statements "neither inherently valuable nor persuasive," as they are conclusions "reserved to the Commissioner" (R. 914).

After Tyroshelle's first denial of disability benefits on December 23, 2021, she continued to visit both Dr. Schroff and FNP Weeks. From to March 3, 2022, to March 16, 2023,[4] Tyroshelle presented to Dr. Schroff about every three to five months. (R. 1368.) During these visits, Dr. Schroff documented Tyroshelle's reports of difficulty walking, full-body-pain, and soreness. (R. 1380–81, 1389–90, 1395, 1399–1400.) Dr. Schroff observed muscle weakness, back pain, joint pain, decreased range of motion of the right shoulder, and swelling of the extremities. (*Id.*) He noted Tyroshelle's normal gait and station, normal range of motion in her lower extremities, and that she did not use assistive devices[5] on March 3, 2022, August 17, 2022, December 16, 2022, and July 20, 2023, respectively. (*Id.*)

FNP Weeks's treatment notes between this date range—specifically from January 19, 2022, to July 18, 2023—document Tyroshelle's general muscle and joint tenderness, myalgias, and pain in her lower extremities and shoulder. (R. 1269, 1291, 1303.) The notes further document a normal foot exam in April 2022 and "[g]rossly normal movement of all extremities" in July 2022. (R. 1281, 1291.)

On July 20, 2023, Tyroshelle presented to Dr. Schroff for an office visit, stating she had no major flares or changes at the time. (R. 1379.) Dr. Schroff performed a physical exam and noted that Tyroshelle used no assistive device at the time and had normal gait and station.

---

[4] Exhibit 18F contains a summary of these encounters. (R. 1367–1457.)

[5] Tyroshelle testified at the April 2024 hearing that she was previously prescribed a rollator by her rheumatologist, "Dr. Stone," in "the beginning of 2020 or '22." (R. 949.) The Commissioner observes that no medical records reflect such a prescription, (Def.'s Mot. Summ. J. at 3), and Tyroshelle's filings do not clarify the disparity. Accordingly, the court is not clear on the timing or if the rollator was prescribed instead by Dr. Schroff, but it will consider this evidence where relevant.

(R. 1380–81.) Dr. Schroff examined Tyroshelle's hips, legs, and ankles, noting normal strength and tone and range of motion with bursitis in the hips. (R. 1381–82.)

On August 23, 2023, Tyroshelle presented to FNP Weeks and reported that she had fallen the week before and was severely sore. (R. 1250–51.) FNP Weeks documented that Tyroshelle had no swelling or inflammation of the extremities; no joint, muscle, or bone tenderness; and a full range of motion. (R. 1252.) Treatment notes also indicate Tyroshelle's normal gait and station. (*Id.*) At a follow-up appointment on September 6, 2024, Tyroshelle presented with bruising and scratching on her ankle and leg, and she told FNP Weeks that she lost her footing and had fallen again in the days prior. (R. 1245.) FNP Weeks documented cervical neck pain, general joint tenderness, and lumbar pain, but no acute distress and no clubbing, cyanosis, or edema in her treatment notes. (R. 1245.) FNP Weeks did not perform a gait analysis at this appointment.

Tyroshelle presented to Dr. Schroff virtually on October 30, 2023. (R. 1373.) Dr. Schroff documented swelling of extremities, leg and joint pain, and muscle weakness, but did not perform a gait analysis. (R. 1374.)

On January 8, 2024, FNP Weeks documented that Tyroshelle reported "difficulty moving around" and "bouts of leg weakness, perceiving her legs giving away and impacting her ability to walk, and has requested a prescription for a cane." (R. 1239–40.) FNP Weeks then "prescribed . . . a wide-based cane for mobility support," and documented non-specific tenderness, but no clubbing, cyanosis, or edema in Tyroshelle's extremities. (R. 1239–40.) During Tyroshelle's final encounter with Dr. Schroff—a tele-visit on February 23, 2024, he documented leg pain and muscle weakness, but did not perform a gait analysis. (R. 1368, 1371.)

Psychological health

On October 18, 2020, Disability Determination Services ("DDS") requested that Tyroshelle meet with Dr. Heather Slosman for a psychological consultation. (R. 733–37.) Tyroshelle indicated experiencing anxiety and "feel[ing] down" for many years due to her pain. (R. 733–34.) Dr. Slosman performed a mental-status examination and diagnosed her with major depressive disorder (moderate, single episode) with mild anxious distress. (R. 736.) Dr. Slosman opined that Tyroshelle could engage in simple tasks, but that her depression could impair regular attendance and consistent performance in the workplace. (R. 736.) On October 20, 2020, Dr. Nicole Sampson, a state agency psychological consultant, reviewed the record and echoed that Tyroshelle is limited to performing simple tasks limited in duration. (R. 99–100.) Dr. Stephen Saxby, a non-examining, state agency psychological consultant, affirmed these findings. (R. 112.)

**D. Opinion Evidence**

Dr. Robert McGuffin, an independent consulting physician, performed an initial review of Tyroshelle's disability application on October 19, 2020. (R. 83–102.) Dr. McGuffin opined that Tyroshelle could occasionally lift 20 pounds, frequently lift 10 pounds, and could stand, walk, or sit for 6 hours in an 8-hour workday. (R. 96.) Based on Tyroshelle's diffuse chronic pain, mild degenerative changes, maintained gait, strength, sensation, and significant response to treatment, Dr. McGuffin opined that Tyroshelle could frequently climb ramps and stairs, balance, and kneel; he further opined that she could occasionally crouch and crawl, but never climb ladders, ropes, or scaffolds. (R. 97.) Dr. McGuffin additionally opined that Tyroshelle

had a moderate limitation in understanding detailed instructions and, combined with her physical limitations, she was capable of light and unskilled exertional work. (R. 99–101.)

Dr. Michael Koch reconsidered Tyroshelle's disability application on March 10, 2021. (R. 103–114.) He similarly opined that Tyroshelle could frequently climb ramps and stairs, balance, stoop, and kneel, that he she could occasionally crouch and crawl, but never climb ladders, ropes, or scaffolds. (R. 110.) He further concluded that she was moderately limited in the ability to understand remember detailed instructions. (R. 112.) Dr. Koch affirmed Dr. McGuffin's initial decision that Tyroshelle was capable of "simple[,] unskilled work." (R. 112.)

### E. Testimonial Evidence

On January 29, 2022, Tyroshelle's husband completed a third-party function report to support her claims. (*See* R. 200–07.) In that report, he stated that Tyroshelle suffers full body pain all day, preventing her from doing work inside or outside the home. (R. 21.) In a letter dated the same day, Tyroshelle's mother completed a third-party function report, describing Tyroshelle's constant pain. (R. 22.) She attested to Tyroshelle's pain preventing her from exercising or doing household chores. (*Id.*)

In addition, Tyroshelle appeared twice in front of ALJ Munday to testify: in person at the October 21, 2021 hearing and via Zoom at the April 9, 2024 hearing. In October 2021, Tyroshelle testified to her fibromyalgia pain affecting her whole body, especially her hands, legs, and feet, preventing her from sitting, walking, or standing for long periods. (R. 60.) She also described pain in her right hand and shoulder, which caused difficulty lifting heavy things and reaching overhead. (R. 60–65.) She stated that she could prepare simple meals but spent

most of the day laying on the couch. (R. 60–70.) Tyroshelle also described her anxiety and difficulty in handling stressful situations, like those inherent to a full-time job. (R. 65–73.)

At the April hearing, Tyroshelle repeated that she experiences pain "all day every day." (R. 937.) She testified that she fell twice in August 2023 after her "legs just gave away," so now she uses a cane "all the time[,] inside and outside" to help her balance and walk. (R. 940.) Tyroshelle attested that since the last hearing in 2021, her condition had worsened "[b]ecause now, [she has] to have a cane." (R. 948–49.) She also testified to trouble standing and walking long distances. (R. 941–42.) She testified that her "body is in pain excruciatingly every single day." (R. 951.)

## F. The ALJ's Opinion

In the operative decision,[6] the ALJ concluded that Tyroshelle suffered from the following severe impairments: fibromyalgia, right carpal tunnel syndrome, bilateral knee osteoarthritis, spine disorder, bilateral hip bursitis with osteoarthritis, type-2 diabetes mellitus, obesity, hyperthyroidism disorder, depressive disorder, and generalized anxiety disorder. (R. 901.) She found, however, that Tyroshelle did not suffer from "an impairment or combination of impairments" that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) After "careful consideration of the entire record" and "evaluat[ing medical records] for persuasiveness," the ALJ determined that Tyroshelle had the RFC to perform light work, *see* 20 C.F.R. §§ 404.1567(b), except that she

---

[6] As this case is predicated on the ALJ's findings in her July 12, 2024 opinion, the court will not summarize the findings from the ALJ's previous decision from December 23, 2021. To the extent to prior opinion is relevant, it is addressed in the Analysis.

can frequently stoop, kneel, and climb ramps and stairs; occasionally crouch and crawl; no climbing ladders, ropes, or scaffolds; occasionally reach overhead with the right upper extremity; frequently handle with right upper extremity; frequent exposure to extreme cold; and frequent exposure to vibrations. [She] can have occasional exposure to hazardous conditions, including unprotected heights and moving machinery. [She] can perform simple, routine tasks; occasional independent decision-making, and occasional workplace changes.

(*Id.* 905–06, 910.) As a result, the ALJ determined that Tyroshelle could perform work as an office helper, cashier, or router or routing clerk. (R. 916.) The ALJ therefore concluded that Tyroshelle was not disabled, as defined in the Act, from the alleged onset date—May 20, 2019—through her DLI. (R. 31.)

## III. ANALYSIS

Tyroshelle argues that the ALJ's assessments and findings related to her physical impairments and RFC are not supported by substantial evidence. (Pl.'s Br. Supp. Soc. Sec. App. at 1, 13 [ECF No. 10].) Specifically, she contends that (a) the ALJ failed to explain her conclusion that Tyroshelle's use of a wide-based cane was not medically necessary, and (b) because the ALJ's error was harmful, the case should be remanded for additional vocational expert testimony in light of Tyroshelle's medical need for a cane. (*Id.* at 13, 17–18.) The Commissioner counters that the ALJ sufficiently concluded that Tyroshelle's medical records demonstrate her normal gait, indicating the ability to ambulate without the use of an assistive device. (Def.'s Br. Supp. Mot. Summ. J. at 8 [ECF No. 12].) Because the ALJ predicated her

opinion on objective medical evidence and explained why she discredited evidence cutting in

Tyroshelle's favor, the court affirms the findings of the ALJ.[7]

## A. The ALJ's findings are based on substantial evidence.

As Tyroshelle focuses solely on the ALJ's alleged failure to consider Tyroshelle's

prescription for a cane, so will the court. Under Social Security Ruling 96-9P, ALJs must

"consider the impact of medically required hand-held devices, such as a cane or walker, when

evaluating the claimant's RFC." *Candi L. v. Comm'r of Soc. Sec.*, No. 4:17-cv-30, 2018 WL

7690318, at *8 (W.D. Va. July 31, 2018) (cleaned up) (first citing *Wimbush v. Astrue*, No. 4:10-

cv-36, 2011 WL 1743153, at *2–3 (W.D. Va. May 6, 2011), then citing *Titles II & XVI:*

*Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than*

*A Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996)). "An

ALJ need not account for the use of a hand-held assistive device in the RFC assessment unless

it is medically necessary." SSR 96-9P, 1996 WL 374185, at *7. "To find that a hand-held

assistive device is medically required, there must be medical documentation establishing the

need for a hand-held assistive device to aid in walking or standing, and describing the

circumstances for which it is needed . . . ." *Id.* The claimant carries the burden of providing

the relevant documentation. *See Helms v. Berryhill*, No. 3:16-cv-189, 2017 WL 3038154, at *8

(E.D. Va. June 30, 2017).

In her opinion, ALJ Munday further summarized the relevant code—20 C.F.R. 404,

Subpart P, Appendix 1—on ascertaining medical necessity for an assistive device:

---

[7] Because the court finds that ALJ Munday's findings and conclusions were based on substantial evidence, it
will not consider Tyroshelle's secondary argument regarding harmful error.

Documented medical need means that there is evidence from a medical source that supports the claimant's medical need for an assistive device (see 1.00C2b) for a continuous period of at least 12 months (see 1.00C6a). This evidence must describe any limitation(s) in a claimant's upper or lower extremity functioning and the circumstances for which the claimant needs to use the assistive device. However, while there is no requirement for a specific prescription for the assistive device, if an assistive device (see 1.00C6) is used, the report must support the medical need for the device.

(R. 902.)

Consistent with ALJ Munday's recitation of the regulatory standard, case law from this Circuit supports that "the mere existence of a prescription for a cane is insufficient to establish that a cane is medically necessary." *Javonnie W. v. Dudek*, No. 9:24-cv-05134, 2025 U.S. Dist. LEXIS 87063, at *25 (D.S.C. Apr. 21, 2025) (citing *Castel v. Saul*, No. CV 0:19-596, 2020 WL 6217309, at *5 (D.S.C. Feb. 20, 2020)). Instead, in the Fourth Circuit, "[s]elf-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Paxton v. Berryhill*, No. 2:18-cv-493, 2019 WL 1376073, at *2 (S.D.W. Va. Mar. 27, 2019).

For example, in *Javonnie W. v. Dudek*, a DIB claimant argued that the ALJ erroneously determined that the claimant's use of a cane was not medically necessary. No. 9:24-cv-05134, 2025 U.S. Dist. LEXIS 87063, at *24 (D.S.C. Apr. 21, 2025). The ALJ reasoned that, first, the medical "records reflect[ed] a recommendation by physicians that Plaintiff use a cane [but] do not indicate that the cane is *necessary* to aid in walking or standing; rather they reflect that it *could* aid in his mobility." *Id.* at *25–26. Second, and importantly, the claimant's medical records reflected that despite his use of a cane, the claimant could "ambulate without assistance and

with a normal gait." *Id.* at *26. Despite the records containing conflicting evidence—with some records even stating that the claimant *required* a cane to walk—the reviewing court affirmed, finding "that the ALJ sufficiently explained his reasons for omitting an assistive device to permit review and built a sufficient 'accurate and logical bridge from the evidence to his conclusion.'" *Id.* at *26–27 (quoting *Clifford*, 227 F.3d at 872); *see also Tracey H. v. Kijakazi*, No. 4:20-cv-40, 2021 WL 6071030, at *11 (W.D. Va. Dec. 23, 2021) (affirming ALJ's conclusion that, despite claimant's prescription for a cane, claimant demonstrated normal gait and a full range of motion and was thus unable to provide documentation demonstrating medical need); *cf. Virginia F. v. Saul*, No. 4:10-cv-26, 2020 WL 6737876, at *7 (W.D. Va. Nov. 13, 2020) (reversing ALJ's determination of no medical necessity for a cane because claimant had previously received hospitalization for falls, her prescriptions were adjusted in light of her fall risk, and *her physicians noted their concern* about her fall risk and impaired mobility).

Here—just as in *Javonnie W.* and *Tracey H.*—the court finds that the ALJ based her decision on substantial evidence that, despite Tyroshelle's use of a cane for balance and walking, the cane was not "medically necessary" under the Act.[8] ALJ Munday adequately explained that, despite Tyroshelle's testimony that she uses a cane for balance and walking, her prescription for a cane "was inconsistent with the objective evidence and other suggestions of stability in the treatment notes." (R. 903.) Citing exhibits 3F, 8F, 9F, 14F, and 18F, which contain Tyroshelle's medical reports from multiple providers from 2019 to 2024, ALJ Munday

---

[8] The Commissioner argues that the evidence does not support a substantial need for a cane because Tyroshelle requested one during her January 2024 appointment with FNP Weeks. (Def.'s Br. Supp. Mot. Summ. J. at 10.) But nowhere in ALJ Munday's opinion is it apparent that she relied on Tyroshelle's request for a cane in her analysis of medical necessity. As such, the court agrees with Tyroshelle that this argument is a "post-hoc rationalization." (Pl.'s Rep. at 3 [ECF No. 13].) Therefore, the court will not consider the Commissioner's argument in this case, nor will it disadvantage Tyroshelle for her self-advocacy in her medical care.

determined that Tyroshelle's walking "gait was normal with no assistive devices and good strength" and that "[t]here were no signs, observations, or physical abnormalities to support allegations of spastic walking gait during the relevant period." (R. 902, 908, 909.)

Further, from August 2023 to 2024—a significant time period, because it followed Tyroshelle's first fall—the ALJ found that the evidence supported "well preserved strength, normal sensory, good range of motion, [and] no distress or acute distress." (R. 911). ALJ Munday repeatedly referred to the recent reports of Dr. Schroff and FNP Weeks, which she acknowledged included documentation of Tyroshelle's reported difficulty walking, but plainly and consistently reported normal gait and range of motion. (R. 914; 1234–1457 [Exs. 17F, 18F]); *see also Javonnie W.*, 2025 U.S. Dist. LEXIS 87063, at *24 ("[A]s cited by the ALJ, records reflect that Plaintiff can ambulate without assistance and with normal gait."); *Tracey H.,* 2021 WL 6071030, at *11 ("The ALJ's RFC determination is amply supported by relevant evidence . . . including full range of motion, full strength, normal gait, and ambulating without assistance."). Moreover, the record does not reflect that Tyroshelle was ever classified explicitly as a fall risk by her physicians. *See, e.g.*, *Virginia F.*, 2020 WL 6737876, at *7.

In other words, despite Tyroshelle's self-reports and prescription for a cane—which is not determinative of this issue under Fourth Circuit precedent, as noted above—the record is devoid of an "unambiguous opinion" of medical need that ALJ Munday should have considered in her analysis. *Paxton*, 2019 WL 1376073, at *2. Instead, ALJ Munday based her opinion on a thorough review of the record, and it is not the court's province to reject the reasoned, evidence-based findings of an ALJ. *See Hancock*, 667 F.3d at 472. Therefore, the court finds the ALJ's findings and conclusions are based on substantial evidence.

**B. The ALJ properly discounted FNP Weeks's medical opinion.**

Tyroshelle attempts to discredit the ALJ's finding by highlighting more recent medical opinions in the record, specifically those of FNP Weeks. (Pl.'s Br. Supp. Soc. Sec. App. at 15–16.) FNP Weeks's treatment notes—especially those between August 2023 and January 2024—are favorable to Tyroshelle, because they document Tyroshelle's self-reported fall and her prescription for a cane. (*Id.* at 15–16.) In light of this evidence, Tyroshelle argues "there is no objective evidence of unassisted walking or 'other suggestions of stability' in the medical evidence post January 9, 2024," and therefore, the ALJ committed reversible error by failing to consider it. (*Id.*)

The court disagrees. ALJ Munday explained why she discredited FNP Weeks's opinion, ultimately finding that FNP Weeks's prescribing the cane "was inconsistent with the objective evidence and other suggestions of stability in the treatment notes." (R. 903.) ALJ Munday concluded that Tyroshelle did not have "a documented medical need . . . for a one-handed, hand-held assistive device" given her "well preserved strength, normal sensory, good range of motion, no distress or acute distress, and intact alertness and orientation" and "only nonspecific tenderness with lumbar pain with no acute distress and otherwise normal physical examination" as recently as early 2024. (R. 903.) Later in her opinion, ALJ Munday again expounded considerably on how FNP Weeks's prescribed limitations were "extreme" and based "too heavily on the claimant's subjective statements, which were inconsistent with her own treatment notes and those in the wider record." (R. 914–15.) For example, she emphasized that FNP Weeks's treatment notes—and the record from 2019 to 2024—largely

documented Tyroshelle's normal gait and lack of acute distress.[9] (R. 914) ("[FNP Weeks's]
treatment notes at Exhibit 17F showed only nonspecific tenderness including in the joints,
and some pain in the lumbar spine and cervical neck without acute distress or other
abnormalities . . ."; "Notably, [Tyroshelle] also failed to show a trend[10] of observed falls,
imbalance, or swaying, unsteady or stomping gait. Rather, gait trended normal with no assistive
devices and good strength (3F; 8F; 14F; 18F)."; "[T]here were no signs, observations, or
physical abnormalities to support allegations of spastic walking gait during the relevant period
(9F/8).").

At any rate, Tyroshelle's contention that "there is no objective evidence of unassisted
walking" after FNP Weeks prescribed the cane has a consequential inverse: Tyroshelle did not
provide objective medical evidence to demonstrate that the fall *did* impact her otherwise
normal gait. *See Helms v. Berryhill*, No. 3:16-cv-189. 2017 WL 3038154, at *8 (E.D. Va. June 30,
2017) ("If the claimant fails to supply appropriate documentation, the ALJ need not include
the use of an assistive walking device in the RFC assessment."). For one, Tyroshelle did not
provide an updated, post-fall gait analysis from any of her providers for ALJ Munday to

---

[9] In a footnote in her reply, Tyroshelle asserts that the ALJ's emphasis on Tyroshelle's lack of acute distress is "problematic." (Pl.'s Rep. at 1 n.1.) Because Tyroshelle does not explain why this is inconsistent with a regulatory standard or established Fourth Circuit law, the court makes no judgment on this point.

[10] Tyroshelle argues that the ALJ erred by noting that Tyroshelle's records do not display "a trend of observed falls," and she rightly points out that Fourth Circuit caselaw does not require a claimant to establish a trend of falling in these appeals. (Pl.'s Mot. Supp. Soc. Sec. App. at 16.) By the court's reading, however, the Fourth Circuit places less emphasis on an ALJ's consideration of a trend of falling and more on the existence of a documented medical need for an assistive device, as described in Social Security Ruling 96-9p. 1996 WL 374185, at *7. The dispositive observation in the ALJ's opinion was the lack of medical documentation establishing need for the cane, rather than her secondary observation that the record does not show "a trend of observed falls." (R. 902.) Finding no clear error of law on this point, the court rejects Tyroshelle's implied invitation to reweigh that evidence. *See Hancock*, 667 F.3d at 472.

consider, aside from her August 23, 2023 visit with FNP Weeks that indicated normal gait and station—one week after the first fall. (R. 1251.) Notwithstanding Tyroshelle's testimony[11] and FNP Weeks's prescription for a cane—which ALJ Munday explained why she doubted—the court is not convinced that the ALJ ignored relevant evidence suggesting that Tyroshelle's fall impacted her gait or stability, such that a cane is medically necessary.

While the parties can argue the existence of conflicting evidence in the record, the court must affirm the ALJ's findings if such "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson*, 434 F.3d at 653. Because ALJ Munday based her findings on objective medical evidence of normal gait and stability, sufficiently described her lack of confidence in FNP Weeks's medical opinions based on contradictory medical evidence, and built a "logical bridge" from the medical record, as a whole, to her conclusions, the court is satisfied that her opinion is supported by substantial evidence. *Clifford*, 227 F.3d at 872.

## IV.  CONCLUSION

For the foregoing reasons, the court affirms the ALJ factual findings and conclusions that Tyroshelle is not disabled within the meaning of the Act. The Commissioner's final decision will, therefore, be affirmed.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

---

[11] Tyroshelle testified at the 2024 hearing as to her need for a cane for balance and walking. (R. 940, 948-50.) The ALJ acknowledged Tyroshelle's testimony, but determined that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other types of evidence" presented. (R. 907.) In any event, "the ALJ is not required to accept a claimant's hearing testimony wholesale." *Prudich v. Saul*, No. 1:20-cv-19, 2020 WL 8834900, at *11 (S.D.W. Va. Sept. 25, 2020), *rev'd on other grounds*, No. 1:20-19, 2021 WL 933864 (Mar. 11, 2021).

**ENTERED** this 22nd day of September, 2025.

_/s/ Thomas T. Cullen_
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE